UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **LERON MARCEL** | * | **CIVIL ACTION NO. 07-0773** |
| **VERSUS** | * | |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## MEMORANDUM RULING

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. Pursuant to 28 U.S.C. § 636(c)(1) and with the consent of all parties, the district court referred the above-captioned matter to the undersigned magistrate judge for the administration of proceedings and entry of judgment. For the reasons assigned below, the decision of the Commissioner is **REVERSED**, and the matter **REMANDED** for further proceedings.

## BACKGROUND

Leron Marcel filed the instant application for a period of disability and disability insurance benefits on December 3, 2003. (Tr. 43-45). He alleged an inability to work since June 13, 2003, due to a head injury, ruptured disk in his neck, lower back injury, right knee injury, and right wrist injury. (Tr. 44, 66). The claim was denied at the initial stage of the administrative process. (Tr. 20-24). Thereafter, Marcel requested, and received an April 21, 2006, hearing before an Administrative Law Judge ("ALJ"). (Tr. 222-243). However, in a June 12, 2006, written decision, the ALJ determined that Marcel was not disabled under the Act, finding at Step Five of the sequential evaluation process that he was able to make an adjustment to work that exists in

substantial numbers in the economy. (Tr. 12-19). Marcel appealed the adverse decision to the Appeals Council. Yet, on March 2, 2007, the Appeals Council denied Marcel's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6).

On May 1, 2007, Marcel sought review before this court. He alleges the following errors:

1) the ALJ failed to properly consider plaintiff's medical treatment to determine whether he is entitled to a closed period of disability; and

2) the hypotheticals posed to the vocational expert did not encompass the period of time that plaintiff was actively treated for his injuries.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act (the "Act"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).   Based on a claimant's age, education, and work experience, the Act utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the Act.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3)  An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors

3

>including age, education, past work experience, and residual functional
>capacity must be considered to determine whether the individual can make
>an adjustment to other work in the economy.

See, *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

The ALJ determined at Step Two of the sequential evaluation process that Marcel suffered from the severe impairment of status post head trauma. (Tr. 16). However, the ALJ concluded that the impairment was not severe enough to meet or medically equal any of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. (Tr. 17).

The ALJ then determined that Marcel retained the residual functional capacity for light work, reduced by limited overhead reaching, no balancing, and an inability to use ladders, ropes, scaffolds or to handle more than moderate stress. (Tr. 17).[1] Plaintiff does not challenge the ALJ's

---

[1] Light work entails:
>. . . lifting no more than 20 pounds at a time with frequent lifting or
>carrying of objects weighing up to 10 pounds. Even though the
>weight lifted may be very little, a job is in this category when it
>requires a good deal of walking or standing, or when it involves
>sitting most of the time with some pushing and pulling of arm or
>leg controls. To be considered capable of performing a full or wide
>range of light work, you must have the ability to do substantially

residual functional capacity assessment or disability determination insofar as it reflects his condition at the time of the ALJ's decision. (*See*, Pl. Memo., pg. 4).[2] Instead, plaintiff contends that the ALJ failed to consider the effects of his impairments for a closed period of disability from June 13, 2006, until February 2006. *Id*.

Plaintiff's impairments stem from June 13, 2003, when he fell down a flight of stairs while working on a tugboat. (Tr. 227-228). Marcel's injuries included, *inter alia*, a distal radius fracture, a knee contusion, neck pain, and a nose fracture. (*See*, Tr. 117).[3] As early as September 23, 2003, Dr. Gaddis diagnosed plaintiff with cerebral concussion, post concussion syndrome, cervical disc disease with chronic neck pain, and chronic low back pain. (Tr. 101-105).[4] Dr. Gaddis advised plaintiff to stay off of work until the issues were resolved. *Id*.

On December 4, 2003, an orthopedist, William Kinnard, M.D., examined plaintiff. (Tr. 97-99). Marcel's complaints related to his neck, right shoulder pain and numbness involving both hands, knee pain, and wrist pain. *Id*. Kinnard opined that Marcel would need an anterior cervical

---

> all of these activities. If someone can do light work, we determine
> that he or she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity or inability
> to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[2] Plaintiff's testimony at the hearing essentially supported the ALJ's residual functional capacity assessment. (Tr. 231-232).

[3] A July 30, 2003, MRI of the cervical spine indicated a 5 mm central disc herniation compressing upon the cervical cord at the C5-6 level. (Tr. 112). A July 30, 2003, MRI of the lumbar spine showed degenerative disc disease with disc space narrowing, disc desiccation, and annular tears at the L4-5 level. (Tr. 113). The L3-4 level showed mild central spinal stenosis secondary to degenerative disc disease. *Id*. The reviewing physician diagnosed degenerative disc disease and spondylosis. *Id*.

[4] Marcel reported significant neck pain and low back pain. (Tr. 101-105). His neck and low back pain was aggravated by prolonged sitting, standing, or walking. *Id*. He noted a significant impairment of recent memory, and could not concentrate well on conversation. *Id*.

discectomy and fusion for the disc herniation. *Id*. He felt that lumbar epidural steroid injections were appropriate for the lower back conditions. *Id*. Kinnard recommended that plaintiff obtain an MRI of his wrist. *Id*.

Plaintiff eventually underwent an anterior cervical fusion on October 19, 2004. (Tr. 209). Moreover, plaintiff finally obtained an MRI of his wrist which documented an old disunited fracture of the ulnar styloid and degenerative arthritis. (Tr. 213). Marcel subsequently underwent an arthroscopy of his right wrist on March 17, 2005, and follow-up surgery on May 30, 2005. (Tr. 172, 177). On October 19, 2005, plaintiff's physician returned him to light work. (Tr. 186).

Despite the objective evidence to support plaintiff's cervical pain, right wrist pain, and knee pain which culminated in neck surgery and two wrist surgeries, the ALJ determined that plaintiff had only one severe impairment: status post head trauma. (Tr. 16). This determination, by itself is not grounds for reversal since once a severe impairment is determined to exist, the ALJ must consider all medically determinable impairments in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523 & 416.923. The problem here, however, is that the ALJ failed to consider all of the medical evidence tracing the progression of plaintiff's impairments. For example, at Step Two of the sequential analysis and beyond, the ALJ referred to one wrist surgery, but did not discuss the followup wrist surgery and rehabilitation period or even the October 19, 2004, cervical surgery. (Tr. 16-17).[5]

Under the regulations, the Commissioner is required to consider all medical opinions including statements from physicians reflecting judgments about the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527. The ALJ breaches his duty to consider the record

---

[5] At Step One of the sequential evaluation process, the ALJ cursorily noted that plaintiff had undergone three surgeries. (Tr. 16).

6

as a whole when he neglects to discuss or even mention relevant portions of the medical record. *Estrada v. Barnhart*, 2002 WL 31422431 (W.D. Tex. 2002). The Commissioner's failure to consider material evidence which was necessary for a just determination of a claimant's application requires remand for consideration of that evidence. *See, Dorsey v. Heckler*, 702 F.2d 597, 605 (5th Cir. 1983) (quoting *Essig v. Secretary of Health & Human Services*, 531 F.Supp. 55, 57 (E.D.N.Y.1981)).[6] In this case, it is manifest that the Commissioner failed to consider all of the relevant medical evidence. The omission materially affects the outcome of the decision because the medical evidence may support a finding that plaintiff qualified for a closed period of disability.[7]

    Plaintiff urges the court to enter a judgment granting him a closed period of disability. The courts have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to

---

[6] Plaintiff submitted additional medical records to the Appeals Council. (Tr. 199-221). These records further document plaintiff's treatment during the relevant claim period. *Id*. In his brief to the Appeals Council, plaintiff alleged that these records were submitted to the ALJ, but were inexplicably omitted from the exhibit file. (Tr. 201). Upon remand, the Commissioner will be able to properly discuss and address the effect of these additional medical records which form part of the administrative record. *See generally, Higginbotham v. Barnhart*, 405 F.3d 332 (5th Cir. 2005)

[7] The undersigned further observes that the instant ALJ partially relied upon a "consultant's" physical residual functional capacity assessment. (Tr. 18, 162-169). It is readily apparent, however, that the "consultant" was not a medical consultant, but instead a disability determination examiner. (*See*, Tr. 169, 20). A disability determination examiner ("DDE") is not a medical doctor, and his opinion is not considered an acceptable medical source statement or afforded the same weight as an opinion of a medical or psychological consultant of the state agency. 20 C.F.R. 404.1527(f) and 416.927(f). The opinion of the DDE can only be considered as lay evidence and is afforded little probative value. 20 C.F.R. 404.1513(d)(3) and 416.912(d)(3).

conclusively determine that the claimant is entitled to benefits. *See, Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also*, *Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits). The instant record is not so disposed. For instance, the court is unable to discern plaintiff's residual functional capacity from the time of his accident through his surgeries and the recovery period. This issue and the remaining steps of the sequential evaluation process must be initially addressed by the Commissioner upon remand.

For the foregoing reasons, judgment will be entered **REVERSING** the decision of the Commissioner and **REMANDING** the matter for further proceedings consistent with this opinion.

THUS DONE AND SIGNED at Monroe, Louisiana, this 15th day of May, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE